IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHRISTINA E. SANDERS,          *
                               *
       Plaintiff,              *
                               *
vs.                            *  CIVIL ACTION NO. 23-00205-KD-B
                               *
CHILD ADVOCACY CENTER, *et al.*, *
                               *
       Defendants.             *

## REPORT AND RECOMMENDATION

This action is before the Court on review of Plaintiff Christina E. Sanders' amended complaint. (Doc. 4). For the reasons set forth below, the undersigned recommends that this action be **DISMISSED without prejudice** because this Court is precluded from exercising jurisdiction over Sanders' claims involving the custody of her minor child, and because Sanders has repeatedly failed to plead a complaint that complies with the Federal Rules of Civil Procedure and states a claim on which relief may be granted.

## I.  BACKGROUND

On June 2, 2023, Plaintiff Christina E. Sanders ("Sanders"), proceeding *pro se*, filed a complaint and a motion to proceed

without prepayment of fees. (Docs. 1, 2).[1] In her original complaint, Sanders purported to bring this action on behalf of herself and her minor child, J.T.L.S.[2] (See Doc. 1 at 1). Although it was not clear, the complaint appeared to name as Defendants the Child Advocacy Center of Mobile, Alabama; the Mobile County Department of Human Resources ("DHR"); Clarity Health LLC of Mobile, Alabama; and certain individuals associated with those entities. (See id. at 2-3). As best the Court could discern, Sanders' complaint alleged that after J.T.L.S. was summarily removed from her home and placed in "state custody" in 2022, he was "immediately placed . . . in a home with foster parents" when "he should have been placed w[ith] a temporary person[.]"[3] (Id. at 5-6). Sanders further alleged that Dr. Jack Carney of Clarity Health LLC caused her son "to unlawfully remain in foster care" because he conducted an "evaluation of [Sanders'] mental health" that "wasn't truthful." (Id. at 6). Sanders also alleged that two of her son's front teeth were damaged while he was in state custody, and the "state has not had them fixed." (Id. at 8).

---

[1] This case was referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S).

[2] The complaint listed the Plaintiffs as "Christina E. Sanders and J.T.L.S." (Doc. 1 at 1).

[3] Unless otherwise indicated by brackets, quoted language from Sanders' *pro se* filings is reproduced herein without modification or correction for typographical, grammar, or spelling errors.

Sanders' original complaint included a number of attachments, including a June 2022 order of the Mobile County Juvenile Court awarding temporary custody of J.T.L.S. to the Mobile County DHR and documents relating to subsequent proceedings before the Juvenile Court. (See id. at 5; Docs. 1-1, 1-2). For relief, Sanders requested the reinstatement of her parental rights, the "immediate return" of her child, and a "monetary reward in the amount of 4 billion dollars for unlawfully keeping [her] child in state custody." (Doc. 1 at 6).

In an order dated June 9, 2023, the undersigned granted Sanders' motion to proceed without prepayment of fees and conducted an initial screening review of Sanders' complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). (Doc. 3). After screening Sanders' complaint, the undersigned concluded that it failed to state a claim on which relief could be granted and was an impermissible shotgun pleading, and that this Court lacked jurisdiction to review Sanders' claims involving the custody of her minor child. (Id. at 1). In addition, the Court noted that Sanders purported to bring this action on her own behalf and on behalf of her minor child, but as a non-lawyer, she was not authorized to bring a *pro se* action on her child's behalf. (Id. at 7). The Court further noted that Sanders' complaint failed to clearly identify which persons or entities were being named as Defendants because it appeared to

treat entities and individuals associated with those entities as a single Defendant. (Id. at 14).

The undersigned explained to Sanders the applicable pleading standards for a complaint in federal court, including what is required to state a claim for relief, the requirements of Federal Rules of Civil Procedure 8 and 10, and the prohibition against "shotgun pleadings" which violate those rules and fail to provide adequate notice of a plaintiff's claims. (Id. at 4-6). The undersigned also explained why the Court is precluded from exercising jurisdiction over Sanders' claims concerning the custody of her minor child, and why Sanders' complaint was a shotgun pleading and failed to state a claim on which relief could be granted. (Id. at 8-14).

The Court ordered Sanders, to the extent she was able to do so, to file an amended complaint that "states a valid basis for this Court's subject matter jurisdiction, states a claim on which relief may be granted, and addresses and corrects the pleading deficiencies" noted in the Court's order. (Id. at 15). The Court provided the following directives for Sanders when drafting her amended complaint:

> In drafting her amended complaint, Sanders must plead
> her claims with sufficient specificity to conform to
> Rules 8 and 10 of the Federal Rules of Civil Procedure.
> This includes: (a) identifying her pleading as a first
> amended complaint; (b) clearly and separately
> identifying each defendant; (c) making clear which
> claims for relief or causes of action she is asserting

> against each defendant; (d) providing the specific
> factual grounds upon which each of her claims for relief
> are based; (e) specifying the conduct that each
> defendant engaged in with respect to each claim for
> relief asserted against that defendant; and (f) stating
> the relief she seeks.

(Id. at 15-16). The Court informed Sanders that her amended complaint would replace her original complaint, and that her amended complaint therefore "shall not reference or seek to incorporate any portion of the original complaint." (Id. at 16).

Sanders was cautioned that if she filed an amended complaint that failed to address and correct the noted deficiencies in her original complaint, the undersigned would recommend that this action be dismissed. (Id. at 16-17). The undersigned directed the Clerk of Court to send Sanders a copy of this Court's Pro Se Litigant Handbook and encouraged Sanders to review the handbook carefully and utilize it in drafting her amended complaint, so as to avoid repetition of her pleading errors. (Id. at 17).

In response to the Court's order, Sanders filed an amended complaint on July 6, 2023.[4] (Doc. 4). In the amended complaint, Sanders lists the Defendants as follows:

> 1 entity
> Child Advocacy Center . . .
> Makayla Dennis and Detective Long
> 1351 Springhill Ave
> Mobile Al 36604
>     and
> 1 entity Mobile Cnty DHR . . .

---

[4] For her amended complaint, Sanders utilized a form titled "Pro Se 1 (Rev. 12/16) Complaint for a Civil Case." (See Doc. 4).

Kira Stadmire / Jessica Bones-Sigler
3103 Airport Blvd
Mobile AL 36606

2nd Clarity Health . . .
Dr. Jack Carney Medical doctor
2054 dauphin Street
Mobile AL

(Id. at 3).

Sanders describes her claim as follows:

Due to violation of my 6th constitutional right being
violated unlawfully violation of IV and XIV
Constitutional Rights. No concrete evidence has been
supplied by CPS or DHR. In 2005 I had a subarachnoid
hemorraghe bleed on brain, in which I've been placed on
Social Security Disability. I have a neurologist as a
specialist dr. and a primary care physician. Medicines
help manage symptoms of [illegible].

(Id. at 5).

Sanders states that she seeks the following relief:

Due to violation of 14th Amendment I seek relief of
monetary value of 4 billion dollars, reinstatement of my
parental rights and said child J.T.L.S. be returned to
me ASAP it will take countless days/hours of counseling
for both of us to try to retain/maintain a sense of
normalcy due to this undue hardship & strain w/o proof
that these agencies have caused.

(Id.).

Sanders alleges that this Court has federal question

jurisdiction pursuant to 28 U.S.C. § 1331, and when prompted to

list the specific federal statutes or constitutional provisions

that are at issue in this case, she states: "521 U.S. 702 (1997)

Section 504 of Rehabilitation Act of 1973 and title II of Americans

w/ Disability Act of 1990 Violation of IV and XIV of Constitutional
Rights." (Id. at 4).

On an attached sheet of paper, Sanders writes:

To whom it may concern
I have taken steps previously before filing a Federal
lawsuit to try and to settle case out of court I filed
a Civil Rights Complaint w/ federal DOJ back in February
was told I had a case just waited to long for department
to take action. 2ndly I filed a complaint with Alabama
Attorney General office complaint was forwarded to
Montgomery DHR so now my last option to sustain & obtain
justice lies within the federal court system.

(Id. at 6).

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction.

Federal courts are courts of limited jurisdiction and are
authorized by Constitution and statute to hear only certain types
of actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S.
375, 377 (1994). Courts are "obligated to inquire into subject
matter jurisdiction *sua sponte* whenever it may be lacking" and
should do so "at the earliest possible stage in the proceedings."
Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 410 (11th
Cir. 1999). When a plaintiff fails to allege facts that, if true,
show that federal subject matter jurisdiction over her case exists,
"district courts are constitutionally obligated to dismiss the
action altogether if the plaintiff does not cure the deficiency."
Travaglio v. Am. Exp. Co., 735 F.3d 1266, 1268 (11th Cir. 2013).

**B.    28 U.S.C. § 1915(e)(2)(B).**

A court is authorized under 28 U.S.C. § 1915(e)(2)(B) to screen the complaint of a plaintiff proceeding *in forma pauperis* to determine whether it should be dismissed because it (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i-iii).

A case is frivolous under § 1915(e)(2)(B)(i) "when it appears the plaintiff has 'little or no chance of success.'"  Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam) (citation omitted).  A court may conclude that a case has little or no chance of success and dismiss the complaint before service of process when the complaint's legal theories are "indisputably meritless" or when its factual contentions are "clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989).

To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  This necessarily requires that a plaintiff include factual allegations for each essential

element of her claim.  <u>Randall v. Scott</u>, 610 F.3d 701, 708 n.2

(11th Cir. 2010).  A complaint does not need detailed factual

allegations, but it "requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action

will not do."  <u>Twombly</u>, 550 U.S. at 555.  "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'"  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>,

550 U.S. at 557).

**C.  Federal Rules of Civil Procedure 8 and 10.**

Federal Rule of Civil Procedure 8(a)(2) provides that a

complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  The purpose of Rule 8(a)(2) is to "give the defendant

fair notice of what the . . . claim is and the grounds upon which

it rests."  <u>Twombly</u>, 550 U.S. at 555 (quotation omitted).  Federal

Rule of Civil Procedure 10(b) further provides that "[a] party

must state its claims . . . in numbered paragraphs, each limited

as far as practicable to a single set of circumstances.  Fed. R.

Civ. P. 10(b).  "If doing so would promote clarity, each claim

founded on a separate transaction or occurrence . . . must be

stated in a separate count or defense."  <u>Id.</u>

"Complaints that violate either Rule 8(a)(2) or Rule 10(b),

or both, are often disparagingly referred to as 'shotgun

pleadings.'"  <u>Weiland v. Palm Beach Cty. Sheriff's Office</u>, 792

F.3d 1313, 1320 (11th Cir. 2015). In <u>Weiland</u>, the Eleventh Circuit Court of Appeals identified four general categories of shotgun pleadings. <u>See id.</u> at 1321-22. These include complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." <u>Id.</u> at 1322. They also include pleadings that do "not separat[e] into a different count each cause of action or claim for relief," as well as complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." <u>Id.</u> at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." <u>Id.</u>

   C.   *Pro Se* **Litigation.**

   "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court,

including the Federal Rules of Civil Procedure." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989).

### III. <u>DISCUSSION</u>

As an initial matter, despite the dearth of relevant factual allegations in the amended complaint, it is apparent that Sanders continues to improperly seek this Court's involvement in adjudicating a dispute involving custody of her son. For example, in the amended complaint, Sanders appears to complain that "[n]o concrete evidence has been supplied by [Child Protective Services] or DHR" to support the removal of her son and/or the termination of her parental rights, and she continues to request relief that includes the "reinstatement of [her] parental rights" and the return of her son. (<u>See</u> Doc. 4 at 5).

To the extent Sanders seeks federal court intervention with regard to custody determinations concerning her minor child and the State of Alabama's involvement in the same, the undersigned reiterates that the domestic relations exception precludes this Court from exercising jurisdiction over her claims. <u>See, e.g.</u>, <u>David C. v. John E.</u>, 2011 U.S. Dist. LEXIS 133552, at *5, 2011 WL 5828536, at *2 (M.D. Fla. Nov. 18, 2011) ("The domestic relations exception would preclude this Court from hearing a parental rights/child custody case.").

As this Court previously noted:

[T]he "subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quotation omitted), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 127 (2014). Therefore, "federal courts generally dismiss cases involving divorce and alimony, child custody, visitations rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification." Ingram v. Hayes, 866 F.2d 368, 369 (11th Cir. 1988). "Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters." Murphy v. Alabama, 2020 U.S. Dist. LEXIS 235913, at *9, 2020 WL 7395139, at *3 (S.D. Ala. Dec. 16, 2020) (quoting Thompson v. Thompson, 798 F.2d 1547, 1558 (9th Cir. 1986) (per curiam), aff'd, 484 U.S. 174 (1988)); see Guevara v. Padin, 2016 U.S. Dist. LEXIS 187941, at *8, 2016 WL 7188783, at *3 (S.D. Fla. Nov. 9, 2016) ("Many courts willingly apply the domestic relations exception to federal questions and constitutional issues involving intra-family disputes and decline jurisdiction over federal questions which would deeply involve them in adjudicating domestic affairs. . . . This Court will not enmesh itself in a dispute involving enforcement of a judgment for child support or allegedly miscalculated child support payments. Accordingly, the Court shall abstain from exercising jurisdiction over the Plaintiff's federal law claims pursuant to the domestic relations exception.").

Based on Sanders' complaint, it appears that her claims concern the custody of her minor child and would require this Court to review or interfere with underlying state proceedings pertaining to the custody and care of the child - a matter traditionally within the domain of the state courts. See, e.g., Barnes v. Dep't Child. Fams., 2019 U.S. Dist. LEXIS 40628, at *4, 2019 WL 8888211, at *2 (S.D. Fla. Mar. 12, 2019) (declining to exercise jurisdiction pursuant to the domestic relations exception where plaintiff sought to regain her parental rights over her minor children because ruling on plaintiff's claims would require the district court to adjudicate a dispute involving custody of the children); Bodda v. State of Idaho Child Protective Servs., 2016

> U.S. Dist. LEXIS 86313, at *6, 2016 WL 3647841, at *2
> (D. Idaho July 1, 2016) (holding that the court lacked
> subject matter jurisdiction over claims involving
> parental rights where plaintiff had alleged the wrongful
> deprivation of custody of her child). This Court is
> precluded from exercising jurisdiction in such a case
> pursuant to the domestic relations exception.

(Doc. 3 at 8-10).

Additionally, under the Younger[5] abstention doctrine, "a federal court should abstain from hearing a case when (1) the proceedings constitute an ongoing state judicial proceeding, (2) the proceedings implicate important state interests, and (3) the plaintiff has an adequate opportunity to raise [her] constitutional challenges in the state-court proceedings." Shuler v. Meredith, 144 F. App'x 24, 26 (11th Cir. 2005) (per curiam) (citing Middlesex Cty. Ethics Comm'n. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)). Here, Sanders apparently seeks modification of a state child custody order, and while it is not clear, Sanders has not indicated that the state court child custody proceedings have been completed. As to the second factor, "there is no question that child custody matters implicate important state interests." Mahaffey v. Cheatham, 2019 U.S. Dist. LEXIS 187833, at *10, 2019 WL 5491286, at *4 (N.D. Ga. July 30, 2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 187837, 2019 WL 5491305 (N.D. Ga. Aug. 20, 2019); see, e.g., Moore v. Sims, 442

---

[5] Younger v. Harris, 401 U.S. 37 (1971).

U.S. 415, 435 (1979); 31 Foster Child. v. Bush, 329 F.3d 1255, 1275 (11th Cir. 2003); Liedel v. Juv. Ct. of Madison Cty., Ala., 891 F.2d 1542, 1546 (11th Cir. 1990) ("[U]nder Younger and Sims federal district courts may not interfere with ongoing child custody proceedings.").  Thirdly, Sanders fails to allege any reason why the state court system does not provide an adequate remedy for her putative constitutional claims.  Thus, the Court must "assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." Shuler, 144 F. App'x at 26 (quotation omitted).  Accordingly, to the extent Sanders seeks injunctive relief with respect to ongoing state court proceedings involving the care and custody of her child, her claims are subject to dismissal pursuant to the Younger abstention doctrine.

Moreover, the Rooker-Feldman[6] doctrine bars claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

---

[6] The doctrine takes its name from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).  "The Rooker-Feldman doctrine eliminates federal court jurisdiction over those cases that are essentially an appeal by a state court loser seeking to relitigate a claim that has already been decided in a state court." Target Media Partners v. Specialty Mktg. Corp., 881 F.3d 1279, 1281 (11th Cir. 2018).  The purpose of the doctrine is "to ensure that the inferior federal courts do not impermissibly review decisions of the state courts—a role reserved to the United States Supreme Court."  Id.

commenced and inviting district court review and rejection of those judgments." Behr v. Campbell, 8 F.4th 1206, 1212 (11th Cir. 2021) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Thus, to the extent the underlying state court child custody proceedings concluded before this action commenced, and Sanders complains of injuries caused by any final judgments issued by a state court and seeks this Court's review of such judgments, the Rooker-Feldman jurisdictional bar applies to her claims.

In addition to improperly seeking federal court intervention in a child custody dispute that is either before or has been adjudicated by the Alabama state courts, the amended complaint fails to plead sufficient factual content to state a plausible claim for relief. As noted previously, when prompted on the amended complaint form to write a short and plain statement of her claim, Sanders asserted that her "6th constitutional right" and "IV and XIV constitutional rights" were violated. (Doc. 4 at 5). However, the only allegation offered in support of these claims is that "[n]o concrete evidence has been supplied by CPS or DHR." (See id.). This allegation, which is entirely devoid of factual context or detail, is plainly insufficient to plausibly suggest that any Defendant violated Sanders' constitutional rights.

To the extent Sanders seeks to raise claims under "Section 504 of Rehabilitation Act of 1973 and title II of Americans w/

Disability Act of 1990," her amended complaint fails to include factual allegations to support each essential element of such claims.[7]  As the Court previously noted:

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).
>
> To state a claim under either statute, a plaintiff must allege: "(1) that [she] is a qualified individual with a disability; (2) that [she] was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability."  Bircoll v. Miami-Dade County, 480 F.3d 1072, 1083 (11th Cir. 2007); see also Henderson v. Thomas, 913 F. Supp. 2d 1267, 1287 (M.D. Ala. 2012) ("Claims under both [the ADA and Rehabilitation Act] are governed by the same standards.") (citations omitted).

---

[7] Sanders inexplicably continues to list "521 U.S. 702 (1997)" as one of the "specific federal statutes . . . and/or provisions of the United States Constitution that are at issue in this case." (See Doc. 4 at 4).  However, as noted in the Court's June 9, 2023 repleading order, "the Supreme Court's decision in Washington v. Glucksberg, 521 U.S. 702 (1997), which involved the question of whether a state's assisted-suicide ban violated the Fourteenth Amendment's Due Process Clause, has no apparent relevance to Sanders' factual allegations and provides no plausible support for a federal claim in this case."  (See Doc. 3 at 12).

Chase v. Ahuja, 2022 U.S. Dist. LEXIS 227475, at *7-8, 2022 WL 18396431, at *3 (N.D. Fla. Oct. 26, 2022), report and recommendation adopted, 2022 U.S. Dist. LEXIS 226491, 2022 WL 17730878 (N.D. Fla. Dec. 16, 2022). In her amended complaint, Sanders states that she suffered a subarachnoid hemorrhage in 2005 and has "been placed on Social Security Disability." (Doc. 4 at 5). However, she alleges absolutely no facts suggesting that she was discriminated against by a public entity because of a disability and therefore fails to state a plausible disability discrimination claim under Title II of the ADA or § 504 of the Rehabilitation Act.

More broadly, Sanders' amended complaint is a shotgun pleading that fails to provide adequate notice of the claims she is asserting against each Defendant and the factual grounds for her claims. In the repleading order dated June 9, 2023, the Court instructed Sanders that she needed to make clear which claims she was asserting against *each* Defendant and needed to provide the specific factual grounds upon which *each* of her claims for relief were based. (Doc. 3 at 16). The Court also informed her that she needed to identify each Defendant clearly and separately, because her original complaint appeared to treat entities and individuals associated with those entities indistinguishably. (Id. at 14, 16). The Court further informed her that the amended complaint would replace her original complaint, and that her amended

complaint therefore was not to reference or rely on the allegations in the original complaint. (Id. at 16).

Sanders' amended complaint seems to disregard these directives almost entirely. The amended complaint is not appreciably clearer than the original complaint and in fact contains significantly less factual detail than the original complaint. Despite the Court's instructions, the amended complaint still fails to identify the Defendants clearly and separately; instead, it lumps entities and individuals associated with those entities together, making it unclear whether Sanders intended to name both the entities and the individuals as Defendants. (See Doc. 4 at 1, 3). This failure is exacerbated by the fact that Sanders does not specify which claims she is bringing against which Defendants. Indeed, the amended complaint does not allege *any* potentially relevant acts or omissions on the part of several of the persons and entities listed in the "Defendant(s)" section of the complaint.[8] It is true that, unlike its predecessor, the amended complaint directly indicates constitutional provisions that Sanders contends were violated. (See id. at 5). However, the amended complaint does not make clear which Defendant(s) are

---

[8] For example, as best the Court can discern, the amended complaint contains no allegations directed at Clarity Health or Dr. Jack Carney. Nor does the amended complaint allege any acts or omissions on the part of Makayla Dennis, Detective Long, Kira Stadmire, or Jessica Bones-Sigler.

alleged to have violated those provisions, nor does it explain how the provisions were violated or otherwise provide sufficient factual content to plausibly suggest that the identified provisions were violated.

To the extent Sanders relies on the information contained in her original complaint to provide the necessary factual context for the claims asserted in the amended complaint, such reliance is improper and in direct contravention of this Court's pleading directives. The Court specifically informed Sanders in the repleading order that her amended complaint would replace her original complaint, and that the original complaint would be considered abandoned and no longer part of her allegations against the Defendants when an amended complaint was filed. (Doc. 3 at 16). Despite this warning, Sanders filed an amended complaint that is largely devoid of factual detail and appears to rely on the original complaint to inform the Court as to what she is alleging. It is notable that the allegations in the amended complaint, standing alone, would essentially leave a reader guessing as to what Sanders is claiming and what this case is even about.

From the foregoing, it is clear that Sanders has not made a serious attempt to cure her prior complaint's deficiencies. In the repleading order, the Court specifically cautioned Sanders that if she filed an amended complaint that failed to correct the

noted deficiencies in her original complaint as instructed, the undersigned would recommend that this action be dismissed. (Id. at 16-17). Despite this warning, Sanders filed an amended complaint afflicted with at least as many deficiencies as her original complaint, if not more.

A *pro se* plaintiff must generally be given at least one chance to amend her complaint before her action can be dismissed on shotgun pleading grounds. Nezbeda v. Liberty Mut. Ins. Corp., 789 F. App'x 180, 183 (11th Cir. 2019) (per curiam). "When the amended complaint still fails to cure the deficiency, it may be subject to dismissal." Embree v. Wyndham Worldwide Corp., 779 F. App'x 658, 662 (11th Cir. 2019) (per curiam); see Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1358 (11th Cir. 2018) (stating that implicit in "a repleading order is the notion that if the plaintiff fails to comply with the court's order—by filing a repleader with the same deficiency—the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions") (quotation omitted); Pelletier v. Zweifel, 921 F.2d 1465, 1522 n.103 (11th Cir. 1991) ("If Pelletier had refused to comply with the court's directive to file a repleader in conformity with the rules of civil procedure, the court could have dismissed the complaint under Fed.R.Civ.P. 41(b), on the ground that Pelletier failed to comply with Fed.R.Civ.P. 8(a) and (e) to provide a short, clear, and concise statement of the

claim.") (citations omitted), <u>abrogated on other grounds by</u> <u>Bridge</u> <u>v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639 (2008); <u>Birdette v.</u> <u>Saxon Mortg.</u>, 502 F. App'x 839, 841 (11th Cir. 2012) (per curiam) (affirming dismissal with prejudice for failure to comply with a court order where plaintiffs "were specifically informed as to how to replead their complaint to state a claim, and warned that a failure to comply with the court's order would result in dismissal, and they still failed to cure the deficiencies").

A court "may *sua sponte* dismiss an action pursuant to Federal Rule of Civil Procedure 41(b) if the plaintiff fails to comply with court rules or a court order." <u>Smith v. Bruster</u>, 424 F. App'x 912, 914 (11th Cir. 2011) (per curiam) (citing Fed. R. Civ. P. 41(b); <u>Betty K Agencies, Ltd. v. M/V Monada</u>, 432 F.3d 1333, 1337 (11th Cir. 2005)). "In addition to its power under Rule 41(b), a court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation." <u>Zocaras v. Castro</u>, 465 F.3d 479, 483 (11th Cir. 2006) (citing <u>Link v. Wabash R.R.</u>, 370 U.S. 626, 630–31 (1962)). To dismiss an action with prejudice for failure to prosecute, comply with the Federal Rules of Civil Procedure, or follow a court order, the court must find "a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." <u>Betty K Agencies</u>, 432 F.3d at 1339. "While dismissal is an extraordinary remedy, dismissal upon disregard of

an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." Moon, 863 F.2d at 837.

As described in detail above, the Court's previous order gave Sanders fair notice of the defects in her initial complaint in this action and an ample opportunity to correct those deficiencies. The Court also made Sanders fully aware of the consequences of noncompliance. Despite the Court's warning and instructions, Sanders squandered her opportunity and disregarded most of the Court's directives. At this juncture, it appears that Sanders is unwilling or unable to amend her pleadings to comply with the Federal Rules of Civil Procedure and the Court's orders, and there is no indication that any further opportunities to amend would lead to improved results or state a viable claim for relief, particularly given the nature of her claims seeking this Court's involvement in a child custody matter.

Because Sanders was put on notice of the specific defects of her complaint but still filed an amended complaint that failed to remedy these defects and violated the directives in the Court's repleading order, the undersigned submits that even if this Court is not precluded from exercising jurisdiction over one or more of Sanders' claims, this case should be dismissed pursuant to Rule 41(b) and this Court's inherent authority for Sanders' failure to comply with this Court's repleading directives.

## IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that this action be **DISMISSED without prejudice.**

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed

determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

   **DONE** this **11th** day of **July, 2023.**

                                    /S/ SONJA F. BIVINS
                              UNITED STATES MAGISTRATE JUDGE